UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEVEN R. COSNYKA,

                Plaintiff,

v.                                                 **DECISION AND ORDER**
                                                        12-CV-666S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,[1]

                Defendant.

       1.      Plaintiff, Steven Cosnyka, challenges the determination of an Administrative Law Judge ("ALJ") that he is not disabled as defined by the Social Security Act ("the Act"). Plaintiff alleges that he became disabled on September 1, 2008, and he contends that his injuries have rendered him unable to work since that date. He therefore asserts that he is entitled to payment of supplemental security income ("SSI") under the Act.

       2.      Plaintiff filed an application for SSI on December 4, 2008. His application was denied. At Plaintiff's request, an administrative hearing was held before ALJ Joseph Grow on July 8, 2010. Plaintiff appeared through video with a non-attorney representative at the hearing. ALJ Grow considered the case *de novo*, and on July 30, 2010, found that Plaintiff was not under a disability. On May 16, 2012, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on July 13, 2012, challenging Defendant's final decision.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Therefore, under Rule 25(d) of the Federal Rules of Civil Procedure, Colvin will be substituted for former Commissioner Michael J. Astrue as the defendant in this suit. The Clerk of Court will amend the caption accordingly.

[2] The ALJ's July 30, 2010 decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (R. at 70-82).

1

3. On February 10 and March 13, 2013, the Government and Plaintiff filed Cross-Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

      6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

      7.     This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

      8.     While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the

claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the application date of December 4, 2008 (R. at 75);[3] (2) Plaintiff has the following "severe" impairments according to the regulations: degenerative disc disease of the lumbar spine, myospasms, and degenerative joint disease of the left knee (R. at 75); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation Number 4 (R. at 75); (4) Plaintiff retained the residual functional capacity to perform sedentary work, except that Plaintiff is also limited to occasionally climbing ramps or stairs, occasionally climbing ladders, ropes, or scaffolds, and occasionally balancing, stooping, kneeling, crouching, and crawling; further, Plaintiff would be off task approximately 10% of the workday (R. at 75); and (5) Plaintiff is unable to perform his past relevant work (R. at 78). Considering Plaintiff's age, high school education, and his residual functional capacity, the ALJ determined, based on the Medical-Vocational Guidelines and the testimony of a vocational expert, that there are a number of jobs in the national economy that Plaintiff could perform. (R. at 78). Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the

---

[3] Citations to the underlying administrative record are designated as "R."

4

Act, at any time from the alleged onset date of disability through the date of his decision, July 30, 2010.  (R. at 79).

10.     Based on his examination of the record, the ALJ found that Plaintiff would be able to perform sedentary work but would be off-task approximately 10% of the workday, or six minutes per hour. For the purposes of social security claims, the Code of Federal Regulations defines sedentary work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

11.     Plaintiff's first challenge to the ALJ's decision is that he interjected his lay medical opinion and failed to consider the opinion of Plaintiff's treating physician, Dr. Michael Calabrese. Plaintiff contends that the ALJ failed to properly apply the "treating physician rule" because he failed to give special deference to Dr. Calabrese's assessment of limitations on work activities.

12.     According to the "treating physician rule,"[4] the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(c)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw

---

[4] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). But the regulations do not require the ALJ to afford controlling weight to an opinion that is conclusory in nature, inconsistent with other medical evidence on record, and unsupported by test results or stated diagnostic techniques. Schisler v. Sullivan, 3 F.3d 563 (2d Cir. 1993); Alvarado v. Barnhart, 432 F. Supp. 2d 312, 320 (W.D.N.Y. 2006).

13. Having reviewed the evidence at issue, this Court finds no reversible error in the ALJ's treatment of Dr. Calabrese's opinion. The ALJ found Dr. Calabrese's opinion was not fully supported by the evidence and therefore declined to give it controlling weight. (R. at 77). The ALJ is correct: the limitations described by Dr. Calabrese are not supported by any particular findings or explanations. (R. at 291-92). The only limitation Dr. Calabrese notes on Plaintiff's "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" form that relates to Plaintiff's ability to perform sedentary work is that he is "moderately limited" in sitting. (R. at 291). Dr. Calabrese does not discuss what particular medical findings led him to this conclusion. (R. at 291-92). Instead, he simply states that Plaintiff has "physical limitations" that prohibit him from being able to attend work because of his pain. (R. at 292).

In addition, the doctor's opinion was inconsistent with other substantial evidence on the record. Physical examinations from late 2008, when the Plaintiff asserted the onset of his disability, indicate some limitation in range of motion but do not indicate trouble ambulating, sitting, or diminished muscle strength. (R. at 248, 249). In January of 2009, Plaintiff's treating physician found some limitation in Plaintiff's lumbar spine but also noted full muscle strength, normal sensation, and no palpable deficits or point tenderness. (R. at 230, 245-46). Dr. Calabrese's opinion also appears to conflict with Plaintiff's ability to

6

perform daily activities. Indeed, Plaintiff indicated that he cooks, cleans, dresses himself, walks to and from the library, and, at times, exercises. (R. at 50-51, 267.)

Further, Dr. Calabrese's opinion is inconsistent with the opinion of the consulting physician, Dr. Kathleen Kelley. Based on her examination of Plaintiff, Dr. Kelley only noted limitations with respect to repetitive bending or twisting, or when lifting, carrying, reaching, pushing, or pulling markedly heavy objects. (R. at 269). The ALJ correctly noted that these limitations would not restrict Plaintiff's ability to engage in sedentary work. (R. at 77).

The ALJ therefore did not violate the treating physician rule by refusing to grant Dr. Calabrese's opinion controlling weight, as it was conclusory and not consistent with the record.

14.     Plaintiff also contends that the ALJ should have re-contacted Dr. Calabrese before determining whether to give his opinion controlling weight. At the time the ALJ adjudicated Plaintiff's claim, the Regulations required the ALJ to seek additional evidence or clarification, if needed, when the report "contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or [it] does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."[5] 20 C.F.R. § 416.912(e). In the instant case, the ALJ discounted Dr. Calabrese's opinion because it was inconsistent with the opinions of *other* doctors and the record evidence, not because it was inconsistent with his own clinical records or based on unaccepted techniques.

As noted, an ALJ may decline to give a medical opinion weight if it is not consistent

---

[5]Although the Commissioner amended 20 C.F.R. §§ 404.1512, 416.912 effective March 26, 2012, to remove the duty imposed on ALJs to re-contact treating physicians, this Court will apply the version of the regulation in effect when the ALJ adjudicated the claim.

with, or supported by, the objective medical evidence of record or the individuals own statements. Therefore, the ALJ was not required to re-contact Dr. Calabrese. Hall v. Astrue, 677 F. Supp. 2d 617, 628 (W.D.N.Y. 2009); see Netter v. Astrue, 272 F. Appx 54, 56 (2d Cir. 2008) (summary order).

Based on the foregoing, this Court finds that it was not improper for the ALJ to acknowledge Dr. Calabrese's medical assessment, but ultimately to disregard it in favor of the objective medical results and consistent medical opinions in the record. It is the sole responsibility of the ALJ to weigh all of the medical evidence and resolve any material conflicts in the record. See Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 1426, 28 L. Ed. 2d 842 (1971). Under the circumstances presented in this case, it cannot be said that the ALJ arbitrarily substituted his own judgment for that of Plaintiff's treating physician. Rather, this Court finds that the ALJ appropriately afforded less weight to Dr. Calabrese's assessment, which was unsupported and conclusory, than to the opinion of Dr. Kelley and the medical evidence on record.

15. Next, Plaintiff asserts that the ALJ's decision failed to include a function-by-function analysis, as required SSR 96-8p, 1996 WL 374184, at *1. But this Court finds this argument unpersuasive because the ALJ did, in fact, engage in a function-by-function analysis in assessing Plaintiff's residual capacity. He explicitly considered Plaintiff's ability to climb ramps, stairs, ladders, ropes, or scaffolds, and to balance, stoop, kneel, crouch, and crawl. This is adequate. See Novak v. Astrue, No. 07 Civ. 8435, 2008 WL 2882638, at *3 (S.D.N.Y. July 25, 2008) (holding that an ALJ "need not provide a narrative discussion for each function").

16. Next, Plaintiff challenges the ALJ's reliance on the testimony of the vocational

expert ("VE"). First, Plaintiff argues that the ALJ's reliance was improper because it was based on an inaccurate RFC. Having already concluded that substantial evidence exists for the ALJ's RFC, this Court finds that the ALJ's reliance was proper. Indeed, the RFC was supported by substantial evidence on the record, including medical reports and statements from the Plaintiff, and accurately reflected the Plaintiff's situation and limitations. (See R. at 38-39, 42-49, 267-80, 280-81).

Plaintiff also claims that the ALJ erred by noting that Plaintiff had limitations not set forth in the Dictionary of Occupational Titles ("DOT"), yet concluded that the VE's testimony was consistent with the DOT. This Court is aware that there was some confusion regarding the 10% "off-task" time – which is not a limitation set out in the DOT – but that confusion abated after clarification from the ALJ and Plaintiff's representative. At that point, the VE testified that six minutes per hour of off-task time would not "make or break an individual in a job." (R. at 65). This testimony is consistent with the ALJ's RFC, and the ALJ therefore made no error in relying on it.

17. Last, Plaintiff alleges that the ALJ did not apply the appropriate legal standards in evaluating his credibility. But when the ALJ's findings with respect to Plaintiff's credibility are supported by substantial evidence, the reviewing court must defer to his findings. Calabrese v. Astrue, 358 Fed. Appx. 274, 277 (2d Cir. 2009)(summary order); see Aponte v. Secretary, Dep't of Health & Human Services, 728 F.2d 588, 591 (2d Cir. 1984). That is what occurred in this case. The ALJ's adverse credibility finding here is supported by Plaintiff's statements that his pain level with medication is a "3"on a scale of "1-10" (with 10 indicating extreme pain) (R. at 48), that he goes to the library on a daily basis (R. at 50), lives alone and does his own cooking, cleaning, dressing, and light laundry (R. at 51), can

9

ride a stationary bike for exercise (R. at 267), and that he refuses to have back surgery that could improve his pain out of fear that it will worsen his condition. (R. at 46.)

Although the ALJ is required to consider Plaintiff's subjective complaints of pain (§§ 404.1529(a),(c), 416.929(a),(c)), he is "not obliged to accept without question the credibility of such subjective evidence." Blandford v. Apfel, 69 F. Supp. 2d 353, 359 (N.D.N.Y. 1999) (citing Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)); Peterson v. Gardner, 391 F.2d 208, 209 (2d Cir. 1968); Spicer v. Califano, 461 F. Supp. 40, 47-48 (N.D.N.Y. 1978). "There must be objective medical evidence which demonstrates that the claimant has a medical impairment 'which could reasonably be expected to produce the pain or other symptoms alleged . . . .'" Blanford, 69 F. Supp. 2d at 359 (citing §§ 404.1529(a), 416.929(a)).

The ALJ found no objective medical evidence that would demonstrate pain or the described symptoms to the degree that Plaintiff claimed. Although an MRI of Plaintiff's lumbar spine from 2008 indicated degenerative changes, those changes did not cause significant stenosis or compromise of the nerve roots. (R. at 224). And although physical examinations from October and November 2008 indicated some limitation in Plaintiff's range of motion of his lumbar spine, they did not mention any significant trouble ambulating, sitting, or diminished muscle strength. (R. at 248-49.) Further, in January 2009, one of Plaintiff's treating physicians found some limitation in Plaintiff's lumbar spine but also noted that Plaintiff had full muscle strength, normal sensation, and no palpable deficits or point tenderness. (R at 230, 245-46.)

As the Second Circuit has found, the ALJ is entitled to rely not only on what the record says, but also what the record does not say. Dumas, 712 F.2d at 1553. Based on

a lack of objective medical evidence in the record indicating disabling pain and the plaintiff's owns statements about pain levels and daily activity, this court finds no clear error in the ALJ's credibility assessment of Plaintiff.

18. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and supported medical opinions. Accordingly, finding no reversible error and that substantial evidence supports the ALJ's decision, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same relief.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED.

FURTHER, the Clerk of Court will amend the caption by substituting Carolyn W. Colvin for Michael J. Astrue.

FURTHER, that the Clerk of Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: July 3, 2013
      Buffalo, New York

                                      /s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                          Chief Judge
                                    United States District Court